# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# AT NASHVILLE

| | |
|---|---|
| **WILSON CONRAD,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Case 04-CV-1155** |
| v. ) | **Magistrate Judge Knowles** |
| ) | **(Jury Demand)** |
| **GEORGE LITTLE, Commissioner,** ) | |
| **TENNESSEE DEPARTMENT OF** ) | |
| **CORRECTION, Individually,** ) | |
| **(Defendant previously listed as prior** ) | |
| **Commissioner Quenton White),** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant, George Little, Commissioner, Tennessee Department of Correction submits this Memorandum in support of the accompanying Motion for Summary Judgment. Summary Judgment should be granted in this case because Plaintiff failed to timely file a grievance requesting a Level IV hearing with the Department of Correction. Plaintiff alleges that he faxed his grievance form to the Department of Personnel. In fact, as of the date of this filing, Plaintiff has yet to file a grievance with the Department of Correction.

Plaintiff's claim is also barred by the statute of limitations. In October or November of 1998, approximately two weeks after allegedly filing his request for a Level IV hearing with the Department of Personnel, Plaintiff was told that his request had not been received. At that point, Plaintiff knew or should have known that he would not receive a hearing. Nevertheless, Plaintiff's lawsuit was not filed until more than six years after his alleged injury.

The Defendant also seeks summary judgment on the issue of qualified immunity. Plaintiff has no clearly established right to a hearing after failing to send a grievance to the Department of Corrections in a timely manner. Furthermore, the proof in this case is that Commissioner White never told Plaintiff that he would receive a hearing.

Finally, the Defendant seeks summary judgment concerning money damages. Plaintiff's counsel expressly stated at Plaintiff's deposition that money damages were no longer being sought and the Defendant has relied on this representation during discovery. Even if Plaintiff had not decide to forego his claim for damages, Plaintiff's failure to pursue this matter until six years after the alleged injury occurred would mitigate any recovery to which Plaintiff could be entitled.

## FACTS

Pursuant to the Local Rule of Civil Procedure 56(b), Defendant has submitted a separate, concise statement of material facts to which State Defendants contend there is no genuine issue for trial.

## LEGAL STANDARD

The standard for summary judgment is well-established. Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence must be viewed in a light most favorable to the nonmoving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). "The mere possibility of a factual dispute is not enough" to avoid summary judgment, *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992), nor is it sufficient for the nonmoving party merely to "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) *cert. denied* 481 U.S. 1029 (1987). The nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to

defeat a properly supported motion for summary judgment." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (internal quotations and citation omitted).

## ARGUMENT

**I. PLAINTIFF NEVER FILED A GRIEVANCE WITH THE DEPARTMENT OF CORRECTIONS.**

Plaintiff claims that his constitutional rights were violated because he was "denied" a grievance hearing, yet by his own admission, Plaintiff did not file a grievance with the Department of Corrections. For this reason alone, the Defendant is entitled to summary judgment. On September 17, 1998, Plaintiff received the warden's termination letter which stated, "[I]t is my decision to terminate your employment due to conduct unbecoming a State employee, failing to cooperate with the Internal Affairs investigation, falsifying an official document and failing to work your full work shift." (Pl. Dep. Exhibit 5). This letter also directs Plaintiff to review the grievance procedures spelled out in "Chapter 1120-11, Rules of Tennessee Department of Personnel" and to obtain a grievance form from Linda Howell, an employee in the personnel division of the Department of Corrections. (Pl. Dep. Exhibit 5). Pursuant to the Rules of the Tennessee Department of Personnel, Rule 1120-11-.05(4)(a), which governs all state departments, had Plaintiff wanted to appeal the warden's decision, the next appropriate step in the grievance procedure was as follows: "Written grievance and prior step decision submitted to the appointing authority or designee within ten (10) workdays of receipt of decision from Step III."[1] There can be no dispute that the Commissioner of the Department of the Corrections was the appointing authority and Brenda White was the Commissioner's designated hearing officer. Plaintiff should have known that the Commissioner was the appointing authority as Plaintiff had been appointed to his position by

---

[1] Plaintiff chose to begin his grievance proceeding at Level IV. In such cases, Plaintiff is allowed fifteen (15) workdays to file a grievance rather than the ten (10) workdays otherwise allowed by rule. *See* Tennessee Department of Personnel Rule 1120-11.04(1).

the Commissioner of the Department of Corrections. Furthermore, Tennessee Department of Corrections Policy No. 305.01, IV., G. plainly states that the Commissioner of the Department of Corrections is the appointing authority. By his own admission, Plaintiff did not even attempt to send his grievance to the Commissioner or his designee, but rather allegedly faxed his form to the Department of Personnel. (Pl. Dep. p. 47).

Perhaps most importantly, the grievance form that Plaintiff allegedly faxed to the Department of Personnel specifically directs a grievant to send the form to the Department of Corrections. Absolutely no mention is made of the Department of Personnel. At the bottom of the grievance form there is printed the following:

> **Step 4** Submit completed form to:   Department of Correction (Central Office)
> ATTN:Hearing Officer
> Nashville, TN 37219

This is the form's sole reference to the fourth step of the grievance process. Any confusion Plaintiff might have had concerning where to send his form should have been resolved after reading this paragraph. Had his form been sent to this address, it would have been received by Brenda White and handled appropriately. As the matter presently stands, Plaintiff has never sent a grievance form to the Department of Correction.

Plaintiff was well aware that grievance forms were to be sent to the Department of Correction rather than the Department of Personnel. Four years earlier, Plaintiff was involved in a disciplinary matter and properly filed a Level IV grievance with the Department of Corrections. (Brenda White Affidavit, para. 5). Plaintiff mailed his Level IV grievance directly to Brenda White at the address listed on the bottom of the grievance form. (Brenda White Affidavit, para. 5). This filing clearly illustrates that Plaintiff was capable of following these basic instructions and was aware that grievance forms should be sent directly to the Department of Corrections. Furthermore, only five days after mailing his grievance form, Plaintiff received a letter from Ms. White indicating.

In the present case, Plaintiff knew or should have known that his grievance form had not been received when he received no reply from Ms. White.

Plaintiff also went through the grievance process in 1987 when he was suspended for 10 days. While the documents concerning the 1987 grievance can no longer be located, the fact that a Level V grievance hearing was held indicates that Plaintiff had earlier submitted a Level IV grievance form to the Department of Corrections. This can be assured because Level IV hearings are precursors to Level V hearings and Department of Corrections has never received Level IV grievance forms via the Department of Personnel or any other department. (**Brenda White Affidavit, para. 4**). Based on his prior experience, Plaintiff knew or should have known that procedure mandated that Level IV grievance forms be delivered to the Department of Corrections, not the Department of Personnel.

Hoping to blunt the effect of his failure to properly file his grievance form in 1998, Plaintiff claims that Tina Johnson, an employee at the Department of Personnel, told him to fax his grievance form to her. If this matter were to be tried, the Defendant would present evidence disputing this claim. Nevertheless, it is undisputed that had a request for a Level IV hearing been mistakenly submitted to the Department of Personnel, it would have been placed in Plaintiff's personnel folder. (Johnson Affidavit, para. 7). No faxed grievance is contained in Plaintiff's personnel file. (Johnson Affidavit, para. 7).

It was the Plaintiff's responsibility to ensure that his grievance was properly filed, but Plaintiff took no precautions to ensure timely filing. He allegedly faxed his grievance from a machine that could not print a confirmation receipt. (Vise Correspondence). He did not call promptly to determine whether his fax had been received. (Pl. Dep. p. 48). He did not send the grievance to the address listed on the grievance form. (Pl. Dep. p. 47). According to Plaintiff's testimony, he did not even tell the employee of the Department of Personnel that he wished to file

a Level IV grievance.[2] (Pl. Dep. pp. 43-45). His primary concern for calling the Department of Personnel was to determine whether his prior suspension could be enforced, not to arrange for the filing of a Level IV grievance. (Pl. Dep. pp. 43-44). Had Plaintiff followed the established rules and filed his grievance with the Department of Corrections or simply been diligent in confirming the receipt of his fax, thereby discovering that it had not been received and that it should have been sent to the Department of Corrections in the first place, this matter might have been resolved six years ago. Regardless, the undisputed facts of this case show that Plaintiff failed to file his Level IV grievance with the Department of Correction within the fifteen workdays permitted by rule. For this reason, Plaintiff's action should be dismissed.

## II. PLAINTIFF'S LAWSUIT IS BARRED BY THE STATUTE OF LIMITATIONS.

In this action brought pursuant to 42 U.S.C. §1983, there is no dispute that the applicable statute of limitations is one year. (*See* Docket No. 13). Likewise, there is no disagreement that Plaintiff filed his Complaint on December 30, 2004. (Docket No. 1). However, there is a dispute concerning when the statute of limitations began to run. Based upon the undisputed evidence in this case, Plaintiff knew or should have known of his alleged injury in 1998, but he waited six years to file his complaint; thus, Plaintiff's window for filing an action closed long ago. Plaintiff now alleges that his injury occurred in 2004, but his interest in a hearing had long since expired at that point.

On September 17, 1998, Plaintiff received a letter from Warden Morgan indicating that he was being terminated from State service. (Pl. Dep. Exh. 5). Plaintiff claims that he twice faxed his Level IV grievance form to the Department on Personnel on October 5, 1998. (Pl. Dep. Exh. 7). Two weeks to a month later, Plaintiff allegedly made two or three calls to someone working for the State to see if his grievance had been received. (Pl. Dep. pp. 47, 60-61). On at least one occasion,

---

[2] The Department of Personnel accepts Level V grievances and arranges Level V hearings.

Plaintiff was told that his grievance had not been received. (Pl. Dep. p. 62). He was also told that no grievance hearing was scheduled. (Pl. Dep. p. 62). By his own admission, Plaintiff took no further steps to secure a hearing until 2003. (Pl. Dep. pp. 63, 65).

At some point in 2003, Plaintiff claims he was introduced to Commissioner White at a political rally. (Pl. Dep. p. 68). Plaintiff told Commissioner White that he had been terminated from his position and wished to discuss the matter with him. (Pl. Dep. p. 69). Commissioner White allegedly told Plaintiff to call his office and set up a meeting. (Pl. Dep. p. 69). This was the only conversation Commissioner White ever had with Plaintiff. (Pl. Dep. p.89).

Plaintiff called Commissioner White's office and, in November 2003, a meeting was held with Plaintiff and two employees of the Department of Corrections. (Pl. Dep. pp. 70, 79). At the meeting, Plaintiff was told to submit information that proved he had timely filed his Level IV grievance. (Pl. Dep. pp. 72-73). Plaintiff had no other meetings with Departmental employees. (Pl. Dep. p. 75). In January 2004, Plaintiff allegedly received a call from Brenda White, the Commissioner's designee for Level IV hearings (Brenda White Dep. p. 9). Ms. White allegedly told Plaintiff that the Department was going to schedule a hearing. (Pl. Dep. pp. 80-81). Plaintiff called Ms. White a "couple of times" about the hearing, but was told that no hearing had been scheduled. (Pl. Dep. p. 83). Plaintiff then filed this lawsuit.

Plaintiff's one-year statute of limitations began to run in October or November of 1998, when he was told that his grievance had not been received and no hearing was to be scheduled. The law concerning the commencement of the statute of limitation has been well articulated:

> The statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of his action. A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence. Courts have taken a common-sense approach to this task, inquiring as to what event should have alerted the typical lay person to protect his or her rights.

*Roberson v. Tennessee, et al.*, 399 F.3d 792, 794 (6th Cir. 2005)(internal quotations and citations omitted). It is abundantly apparent that Plaintiff should have been alerted to his need to protect his right to a hearing in October or November of 1998, when he was told that he had failed to file a grievance form and would not be receiving a hearing. What more need be done to alert Plaintiff that his right to a hearing was being impaired than to tell him that he would not receive a hearing? Plaintiff's statute of limitations in this action therefore ran well before 2000, over five years before this suit was filed.

Plaintiff will undoubtedly argue that the statute of limitations began to run at some point after Ms. White allegedly called Plaintiff and said, "We're going to schedule you a hearing." (Pl. Dep. p. 81). This argument is flawed. There is no disagreement that Plaintiff failed to supply the Department of Corrections with his Level IV grievance form. Based upon this failing, Plaintiff missed the filing deadline and was not entitled to a hearing. Neither Ms. White nor Commissioner White can extend the time for Plaintiff to file a grievance. Neither person has been granted statutory authority to waive the statute of limitations on behalf of the State of Tennessee. As stated in *In re Sentinel Trust Co.*, 206 S.W.3d 501, 519 (Tenn.Ct.App. 2005):

> It is a fundamental rule of law that the departments, agencies, and commissions of government have no inherent or common-law power of their own. They are purely creatures of statute. Accordingly, governmental agencies have only those powers expressly granted by statute and those powers required by necessary implication to enable them to fulfill their statutory mandate, and the statutes should be construed liberally since they are remedial in nature. Actions taken by a governmental agency without the required authority are nullities.

(Internal citations omitted). Neither Commissioner White nor Brenda White has not been granted the right to extend the time for filing grievances and, thus, any alleged promise of a hearing after Plaintiff failed to timely file is of no consequence; neither had the authority to make such a promise. Had Plaintiff properly filed a grievance with the Department of Correction, he would have had a right to a hearing that existed irrespective of any action or inaction on the part of the Commissioner.

By not properly filing, Plaintiff's right to a hearing was extinguished. Nowhere in the Constitution of Tennessee or the Tennessee Code Annotated is the Commissioner of Corrections given the right to revive extinguished claims. He simply does not have the power. Therefore, even if Commissioner White told Plaintiff that he would schedule a hearing, it would be of no effect.

Furthermore, no hearing was ever scheduled. There is no evidence in the record indicating that a Level IV hearing was scheduled for Plaintiff. Even if Commissioner White could have given Plaintiff a Level IV hearing in 2004 and wished to do so, no hearing was ever scheduled. Plaintiff would apparently argue that Ms. White's alleged utterance that a hearing would be scheduled is enough to revive a long extinguished claim. Common sense dictates that Plaintiff had no expectation of a hearing until one was actually scheduled. Merely indicating that the Department intended to schedule a hearing for Plaintiff is far different than actually scheduling a hearing.

Plaintiff also will likely argue that this issue was previously resolved by Judge Campbell in the Plaintiff's favor. This argument is also without merit as the facts obtained through discovery have greatly changed the landscape of this case. It is certainly true that the Defendant filed a Motion to Dismiss concerning Plaintiff's failure to meet the statute of limitations. It is also true that Judge Campbell denied the Defendant's motion. (Docket No. 13). However, Judge Campbell's Order concerned a motion to dismiss and was based on the allegations contained in the Complaint, many of which have now been proven to be untrue. In his Order, Judge Campbell summarized the allegations in the Complaint as follows, "Plaintiff claims that he timely appealed the decision to fire him through the appropriate grievance procedure, but TDOC, despite his repeated attempts to schedule a hearing, refused to set the matter for a hearing. In January of 2004, however, Defendant had reviewed the information concerning Plaintiff's appeal and that Plaintiff would receive a hearing." (Docket No. 13, pp. 1-2). In his deposition, Plaintiff himself refuted these allegations found in his Complaint:

> 1) Plaintiff did not timely appeal the decision through appropriate grievance procedures. As articulated above, at best, Plaintiff ignored the directions on the grievance form and filed his grievance with the wrong department. (Pl. Dep. p. 47).
>
> 2) Plaintiff did not make "repeated attempts" to schedule a hearing. Within two to four weeks after allegedly faxing his grievance to the Department of Personnel, Plaintiff called unidentified employees at the State two or three times to see if his grievance was received. (Pl. Dep. p. 47). He was told that the grievance was not received. (Pl. Dep. p. 60). He did not contact anyone at the State again for over four years concerning this matter. (Pl. Dep. p. 65).
>
> 3) Commissioner White never told Plaintiff that he had reviewed the information concerning Plaintiff's appeal or that Plaintiff would receive a hearing. (Pl. Dep. p. 80). The only time that Plaintiff ever spoke with Commissioner White was during their brief encounter at a political fund-raiser. (Pl. Dep. pp. 78-80).

Thus, many of the key elements upon which Judge Campbell's order denying the Defendant's Motion to Dismiss have been proven to be unfounded. Judge Campbell's ruling, therefore, has no bearing on the present motion for summary judgment.

Ordering the Department of Correction to hold a Level IV hearing at this juncture would create an insurmountable hardship for the State. Over eight years have passed since Plaintiff is alleged to have faxed a grievance to the wrong department. Plaintiff is responsible for any delay in bringing this matter to the attention of the Court. At this point, it would be exceedingly difficult to locate witnesses for a Level IV hearing concerning events that took place eight years ago. Even if they could be located, it is unlikely that they could remember the details they once knew. Statutes of limitations were put in place to help ensure that defendants were not placed in positions such as this. Had Plaintiff made even a modest effort to address this situation in 1998, the matter could have

Doc152122
10
Case 3:04-cv-01155    Document 39    Filed 02/01/07    Page 10 of 13 PageID #: 76

been resolved appropriately. At this juncture, if granted a hearing, Plaintiff will be allowed to benefit from his inaction and failure to follow procedure. For these reasons, Plaintiff failed to meet the statute of limitations and the Defendant is entitled to summary judgment.

## III. Commissioner White is Entitled to Qualified Immunity.

Two questions must be considered in order to determine whether a defendant is entitled to qualified immunity. First, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, was the right "clearly established?" *Id*. The answer to both of these questions is "no."

Commissioner White's actions did not violate a constitutional right. First and foremost, there is no proof in the record that Commissioner White agreed to grant Plaintiff a hearing. Plaintiff had only one conversation with Commissioner White at a political fund-raiser. (Pl. Dep. p. 68 and 89). During that conversation, a Level IV hearing was never discussed. (Pl. Dep. p. 71). Commissioner White denies ever telling anyone that Plaintiff should receive a Level IV hearing. (Commissioner White Dep. p. 42). Second, Plaintiff did not have a constitutional right to a hearing because he did not timely file his Level IV grievance with the Department of Correction. Thus, Plaintiff had no right to a hearing in the first place.

Commissioner White did not violate a "clearly established" constitutional right. As stated by the Supreme Court, "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right." *Id.* at 202. Certainly no official would believe that Plaintiff had a right to a hearing where he had not timely filed a grievance. Commissioner White could not have known that by failing to grant Plaintiff a hearing to which he was not entitled he would violate Plaintiff's constitutional rights.

## IV. Damages

Doc152122                                      11
Case 3:04-cv-01155    Document 39    Filed 02/01/07    Page 11 of 13 PageID #: 77

Plaintiff's counsel expressly stated at Plaintiff's deposition that money damages were not being sought and the Defendant has relied on this representation during discovery. (Pl. Dep. pp. 1-2). The Defendant acknowledges that Plaintiff is still seeking a Level IV hearing and attorney's fees. Even if Plaintiff had not decided to forego his claim for money damages, Plaintiff's failure to pursue this matter until six years after the alleged injury occurred would mitigate any recovery to which Plaintiff alleges he is entitled.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests this Court to grant it Summary Judgment.

Respectfully submitted,

**ROBERT E. COOPER, JR.
ATTORNEY GENERAL AND REPORTER**

   *s/ Jay Ballard*
**Jay C. Ballard, BPR #17242**
Assistant Attorney General
Civil Litigation and State Services Division
P.O. Box 20207
Nashville, TN 37202
(615) 741-5031
jay.ballard@state.tn.us


## CERTIFICATE OF SERVICE

I hereby certify that on **February 1, 2007**, a copy of **Memorandum in Support of Motion for Summary Judgment** was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

   *s/ Jay Ballard*
**Jay C. Ballard, BPR #17242**
Assistant Attorney General
Civil Litigation and State Services Division
P.O. Box 20207
Nashville, TN 37202
(615) 741-5031
jay.ballard@state.tn.us