IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| WILSON CONRAD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. 3:04-1155 |
| | ) | MAGISTRATE JUDGE KNOWLES |
| | ) | JURY DEMAND |
| | ) | |
| GEORGE LITTLE, Commissioner, | ) | |
| TENNESSEE DEPARTMENT OF | ) | |
| CORRECTION, Individually, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I. Introduction and Background

This matter is before the Court upon Defendant's Motion for Summary Judgment. Docket No. 38. Defendant has filed a supporting Memorandum (Docket No. 39), a Statement of Undisputed Material Facts (Docket No. 40), the Affidavit of Tina Johnson (Docket No. 41), the Affidavit of Brenda White (Docket No. 42), and certain deposition excerpts.

Plaintiff has filed a Response in Opposition to the Motion (Docket No. 47), a Response to the Statement of Undisputed Material Facts (Docket No. 49), the complete Deposition of Wilson Conrad (Docket No. 48-2), and the Declaration of Randy Rinks (Docket No. 48-4).

Defendant has filed a Reply to Plaintiff's Response. Docket No. 52.

Plaintiff filed this action pursuant to 42 U.S.C. § 1983 against Quenton White, then-Commissioner of the Tennessee Department of Correction, in his individual capacity. Docket No. 1. Plaintiff averred that his due process rights under the Fourteenth Amendment to the United States

Constitution had been violated. Plaintiff averred that he was employed with the Tennessee Department of Correction at the Turney Center, and was so employed in February of 1998. At that time, a "complaint" was submitted, presumably to the Warden of Turney Center, complaining that Plaintiff had made an inappropriate statement of a sexual nature to the Complainant. Plaintiff avers that the Complainant subsequently recanted the allegations, which Plaintiff avers were completely untrue and unfounded.

On July 15, 1998, the Warden gave Plaintiff a notice of intent to take disciplinary action. The Employee Disciplinary Committee reviewed the charges and information and recommended to the Warden that Plaintiff be terminated. On September 8, 1998, Plaintiff appeared for a hearing before the Warden, who, on September 16, 1998, decided to terminate Plaintiff's employment.

Plaintiff avers that, on October 5, 1998, he timely appealed the decision to terminate his employment through the grievance procedure outlined to him in a letter from the Warden dated September 16, 1998. The Department of Correction, however, did not process the grievance and refused to set a hearing. Plaintiff avers that he "repeatedly attempted to secure a hearing on his grievance but was denied any hearing until January 2004." Docket No. 1, p. 3. Plaintiff avers that, at that time, he was advised by Defendant that Defendant had reviewed "the information related to [Plaintiff's] appeal," and that Plaintiff would receive a hearing to be scheduled at a later date. In July 2004, however, Plaintiff was advised that Defendant had reconsidered and decided not to afford Plaintiff a hearing.

Plaintiff's original Complaint sought several different categories of relief: reinstatement, injunctive relief, compensatory damages, and attorney's fees. Docket No. 1. At the beginning of Plaintiff's deposition, Plaintiff's counsel stated as follows:

Yes. Just for the record, I want to clarify some issues related to Mr. Conrad's claim. First of all, you and I spoke about this, Mr. Griffith. But just for the record, Mr. Conrad is not pursuing any claim for compensatory or punitive damages against Mr. White, Mr. Little, or anyone else for that matter.

The nature of Mr. Conrad's claims are, and remedies we believe are available to him, are, number one, for a remand to complete the due process procedures that are in place for employees to pursue when they have suffered an adverse employment action. And, number two, for attorneys fees related to obtaining an order that he be allowed to complete that due process.

So, it's essentially a classic ex parte young type of claim. There's no claim for damages against anyone individually, and the remedy is to allow him to complete the due process available to him and recover attorneys fees for that.

Secondly, Mr. Conrad obviously disagreed with the decisions through whatever step number it was that he had completed before requesting the appeal hearing to the Commissioner. But he does not make any allegation that he was denied his due process up to that point.

So, in essence, he received all the steps and received his due process up to the point at which he requested the hearing with the Commissioner, and any process available to him after that point.

And, hopefully, that clarifies some of the issues. If there's any further clarification that we can provide, I can do that. I have discussed that all with Mr. Conrad and he understands it and agrees with it and understands that to be the nature of his claims.

Mr. Griffith: And may I treat this as a stipulation for the purposes of going forward in the summary judgment phase in trial?

Mr. Frensley: Sure.

. . .

Mr. Frensley:

. . .

> Essentially, Zack, the argument is that the due process was interrupted. We want to go back and have whatever process is left.
>
> Mr. Griffith: Right, I understand. And I'm sorry about any confusion I caused with that. What I understand, the stipulation you're making this morning, is that this case is going forward is simply and only about his seeking an order requiring that the current Commissioner give him the Level IV hearing that he has not had. And then, of course, from that Level IV hearing he be allowed to move forward to whatever the next step would normally be.
>
> Mr. Frensley: Correct.
>
> Mr. Griffith Okay. And attorneys fees.
>
> Mr. Frensley: Correct.
>
> Mr. Griffith: And that's all.
>
> Mr. Frensley: That's right.

Docket No. 48-2, p. 5-7, 8-9.

In response to the Complaint, Defendant filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Docket No. 8. Plaintiff filed a Response in Opposition to the Motion to Dismiss. Docket No. 12. Judge Campbell subsequently entered a Memorandum and Order denying the Motion to Dismiss. Docket Nos. 13, 14.

Thereafter, the parties consented to have a United States Magistrate Judge conduct any and all further proceedings, pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b) (Docket No. 16-2) and the action was referred to the undersigned (Docket No. 19).

In the instant Motion, Defendant makes three arguments. First, Defendant argues that Plaintiff is not entitled to a Level IV grievance hearing because he did not submit his Level IV Grievance Form to the Department of Correction as he was allegedly required to do. Second,

4

Defendant argues that Plaintiff's action is barred by the statute of limitations. Third, Defendant argues that Commissioner White is entitled to qualified immunity.

## II. Facts

The following facts are undisputed and in a form required by Fed. R. Civ. P. 56, except as otherwise noted.

Plaintiff Wilson Conrad was employed with the Tennessee Department of Correction at the Turney Center as a Lieutenant and was so employed in February 1998. In February 1998, Plaintiff was accused of making inappropriate statements of a sexual nature to a coworker, failing to cooperate with an investigation, falsification of an official document, and failure to work his full shift between June 1, 1998, and July 15, 1998.

Plaintiff was given a notice of intent to take disciplinary action by the Warden of the institution, Jack Morgan, on July 15, 1998.

The Employee Disciplinary Committee reviewed the charges and information and recommended to the Warden that Plaintiff be terminated. On September 8, 1998, Plaintiff appeared for a hearing before the Warden who, on September 16, 1998, decided to terminate Plaintiff's employment. In connection with Plaintiff's termination, the Warden sent him a letter dated September 16, 1998, certified mail, return receipt requested. Conrad Dep., Ex. 5. That letter stated in part as follows:

> After considering all the information submitted to me, it is my decision to terminate your employment due to conduct unbecoming a State employee, failing to cooperate with the Internal Affairs investigation, falsifying an official document and failing to work your full work shift. This conduct is without excuse and will not be tolerated.
>
> . . .

> You may appeal this decision through the Employee Grievance Procedure. If you wish to appeal through the grievance procedure, you should obtain a grievance form from Linda Howell, Personnel, review Grievance procedures in Chapter 1120-11, Rules of Tennessee Department of Personnel, and file any such grievance within 15 workdays. *If you have any questions concerning your appeal rights you should call the State Employee Information line at 615-741-1859 or 1-800-221-7345.*

*Id*. (Emphasis added.)

Plaintiff obtained a "Department of Correction Employee Grievance Form." Page 2 of that Form states in part:

> Submit completed form to:
>
> Department of Correction (Central Office)
> ATTN: Hearing Officer
> Nashville, TN 37219

Conrad Dep., Ex. 8.

The "Grievance procedures" referred to in Warden Morgan's letter dated September 16, 1998, provide in pertinent part as follows:

> **1120-11-.04 BASIC STANDARDS.**
>
> (1) A complaint or grievance must be filed at the appropriate step in the grievance procedure within fifteen (15) workdays of the action which is the basis for the grievance, otherwise it will be considered untimely and invalid.
>
> . . .
>
> (8) Grievances concerning dismissal should be appealed directly to the appointing authority, warden or superintendent.
>
> . . .
>
> **1120-11-.05 PROCEDURES.** The appropriate entrance step is determined by the grievant's relative level in the organization. Procedures shall not be more than five (5) steps to finality as follows:

6

(1) Step I - Grievant's Immediate Supervisor (verbal)

(a) Verbal discussion with supervisor within fifteen (15) workdays of cause.

(b) Supervisory investigation and fact finding.

(c) Decision clearly communicated to grievant within five (5) workdays of discussion.

(2) Step II - Next Appropriate Higher Level of Management (written)

(a) Written grievance submitted to appropriate manager within ten (10) workdays of receipt of Step I decision.

(b) Informal discussion or hearing of facts and allegations.

(c) Investigation, fact finding, and written decision communicated to grievant within ten (10) workdays of discussion.

(3) Step III - Next Appropriate Higher Level of Management (written)

(a) Written grievance and prior step decision submitted to next appropriate manager within ten (10) workdays of receipt of decision from Step II.

(b) Informal discussion or hearing of facts and allegations with witnesses and documentation.

(c) Investigation, fact finding, and written decision clearly communicated to grievant within ten (10) workdays of discussion.

(4) Step IV (written)

(a) Written grievance and prior step decision submitted to the appointing authority or designee within ten (10) workdays of receipt of decision from Step III.

(b) Informal discussion or hearing of facts, allegations, and testimony by appropriate witnesses as determined by the appointing authority or designated representative as soon as practical. Whenever possible, the fourth step hearing shall be conducted by a manager who had no input to or involvement in the original decision to discipline.

7

> (c) Investigation, fact finding, and written final agency decision communicated to grievant within ten (10) workdays of discussion.
>
> (d) The appointing authority shall have full authority to overturn, reduce, or alter any disciplinary action based on information gathered at the Step IV hearing including reinstatement of leave and awards of back pay, if appropriate, which may be offset by income earned from alternative employment or unemployment insurance payment received.
>
> . . .
>
> **1120-11-.09 TECHNICAL ADVICE AND ASSISTANCE.**
>
> . . .
>
> (4) The intent of this policy is to legally, efficiently, and fairly resolve bona fide complaints, and grievances. The initiation of a grievance should not be considered as a negative reflection against an employee, supervisor, or agency management, but should be considered as an effort to communicate and seek resolution of work related problems.
>
> (5) Management should consider grievances objectively, fairly, and expeditiously while maintaining a helpful, cordial, and professional attitude throughout the process of redress.

Rules of the Tennessee Department of Personnel, Chapter 1120-11.[1]

While the parties do not discuss the issue in detail, it is apparent that Plaintiff's September 8, 1998, hearing before Warden Morgan constituted a Step III grievance hearing. In accordance with the Rules quoted above, Plaintiff, therefore, had the right to appeal Warden Morgan's decision to Step IV of the grievance process.

Plaintiff testified in his deposition that, on October 5, 1998, he made a telephone call to one of the telephone numbers listed in Warden Morgan's September 16 letter. He called that number

---

[1] The quoted Rules provisions are those that were in effect in September 1998.

8

because he knew his time to appeal Warden Morgan's decision was running out. He spoke with a woman named "Johnson" at the Department of Personnel. He testified that he told Ms. Johnson he was "going to file [his] grievance and [he] had to get it filed . . . ." Docket No. 48-2 (Conrad Depo.), p. 38. He testified, "she said fax it to me." *Id.* He further testified, "And she told me to fax it to her, gave me her phone number, it could be taken care of through her to get to the proper places [*sic*]." *Id.*, p. 44.

Plaintiff faxed the Employee Grievance Form and Warden Morgan's September 16 letter to Ms. Johnson twice on October 5. *Id.* He testified that he faxed these materials from Vises Discount Pharmacy in Parsons, Tennessee. Plaintiff provided a telephone bill dated October 12, 1998, of Vises Discount Pharmacy, which shows two telephone connections on October 5, 1998, to the Nashville number 615-253-2123. *Id.*

Plaintiff faxed these materials to the *Department of Personnel,* not to the Department of Correction. It is undisputed that Plaintiff did not file the Grievance Form directly with the Department of Correction.

Defendant has filed the Affidavit of Tina Johnson (Docket No. 41), which establishes the following facts. Ms. Johnson is a Legal Assistant at the Department of Personnel, and has been employed by the Department of Personnel since approximately 1994. The Affidavit states, "I regularly advise employees concerning grievances." Ms. Johnson does not recall having a conversation with Mr. Conrad in 1998. If she had done so, however, she would not have advised him to fax his Level IV Grievance Form to the Department of Personnel, but would have advised him to file his grievance with the Department of Correction. She does not remember receiving a faxed Level IV Grievance Form from Mr. Conrad, and she does not believe that such a Form was

9

received by the Department of Personnel. If a Level IV Grievance Form had been received by her office, it would have been placed in the employee's personnel file and not sent to any other department. Mr. Conrad's file does not contain a Level IV Grievance Form. The Department of Personnel, however, does accept Level V Grievance Forms pursuant to the Rules of the Tennessee Department of Personnel.

Within two weeks of October 5, 1998, Plaintiff made "a couple of calls" to try to find out if his grievance had been received. Docket No. 48-2, p. 60. On one occasion he was told that "it had never been received." Docket No. 60. He also testified, however, "One lady I talked to said she had received one." *Id.,* p. 62.

Thus, there is a significant factual dispute concerning the submission of Plaintiff's grievance appeal to Level IV of the grievance process.

Following the October 1998 telephone calls, Plaintiff did nothing further with regard to his grievance appeal until approximately 5 years later, in 2003. *Id*., p. 65. Plaintiff apparently had been unconcerned about the length of time it was taking to schedule his hearing because he was aware of other cases in which it had taken several years for a hearing to be set. *Id*., p. 48, 78.

In approximately September 2003, Plaintiff met then-Commissioner of Corrections Quenton White at a political rally in Decatur County. *Id*., p. 66, 68. (Mr. White was not the Commissioner while Plaintiff had been employed at the Department of Correction. *Id.*) Plaintiff testified as follows:

> Q. [By Mr. Griffith] What did you tell him about this or what was the conversation regarding this matter?
>
> A. Our conversation was that I would like to speak to him, that I had been terminated several years earlier. And he said that he would take time to speak with me, to call his office and make an appointment.

10

> Q. Is that all he told you there standing there that day?
>
> A. Yes, sir.

*Id.,* p. 67-68.

A "week or so" after Plaintiff met Mr. White, he called Mr. White's office and Mr. White's secretary scheduled a meeting with Plaintiff. *Id*., p. 69. In November 2003, Plaintiff met with Ms. Carolyn Slaughter and Ms. Medlin. *Id*., p. 70. Then-Commissioner White did not attend that meeting. *Id*.

At the meeting, Ms. Medlin told Plaintiff that he needed to prove that he had faxed the grievance in 1998. *Id*., p. 74. He retrieved the phone records from Vise Pharmacy, and gave a copy to Ms. Medlin and State Representative Randy Rinks.

Plaintiff further testified as follows:

> Q. [By Mr. Griffith] Did you have any meetings after the November 2003 meeting?
>
> A. With who?
>
> Q. With anybody at the Department of Correction?
>
> A. No, sir.
>
> Q. So did you ask them in November of 2003 when do I get my grievance hearing? Did you ask then about a grievance in that November 2003 meeting?
>
> A. No, sir. Well, I mean, no, sir, I didn't, because at that point in time I needed to prove it by the new personnel persons coming in.

*Id.,* p. 75.

> Q. [By Mr. Griffith] Did anybody at that meeting say we will give you a hearing?
>
> A. No, sir.

11

> Q. Did Commissioner White ever say I will give you a hearing?
>
> A. No, sir.

*Id*., p. 79-80.

Ms. Medlin did not tell Plaintiff either that the Department of Correction had previously received his grievance or that the Department of Correction had not previously received his grievance.

In late January 2004, Plaintiff received a call from Ms. Brenda White, a Grievance Hearing Officer with the Department of Correction. *Id*., p. 80-81. He testified as follows:

> Q. [By Mr. Griffith]. Did she tell you you would receive a formal hearing before the Commission to appeal your termination?
>
> A. Ms. White told me it's about time. We're going to schedule you a hearing. We talked via a phone call.
>
> Q. Was that the first time anybody said anything to you about getting a hearing? Was that the first time you were informed that you were to receive any type of hearing?
>
> A. Yes.
>
> Q. Did she tell you what type of hearing you would receive?
>
> A. A Level IV Commissioner-level hearing.

*Id.,* p. 80-81. He also testified, "I was called by Ms. White and was told that a hearing was set up." *Id*., p. 87.

Ms. Brenda White testified in her deposition, however, that Commissioner White never told her to inform Mr. Conrad that he would receive a Level IV hearing.[2] Docket No. 43-4. She also

---

[2] Defendant also filed the Affidavit of Brenda White in support of the instant Motion. Docket No. 42. That Affidavit, however, concerns a Level IV grievance filed by Plaintiff in 1987. While documents concerning that grievance hearing cannot be located, Ms. White

12

stated, "I would have no reason to call him stating that he was going to have a Level IV hearing because I was never instructed to give him a hearing." *Id.*

Thus, there is a significant factual issue concerning whether Plaintiff was told by grievance hearing officer Brenda White that he would receive a Level IV grievance hearing.

Within the next couple of weeks, Plaintiff called Ms. White a couple of times. *Id.*, p. 82. Ms. White told Plaintiff that a hearing had not yet been scheduled. *Id.*, p. 83. Plaintiff, however, was never told that the Commissioner was not going to set a hearing. *Id.*, p. 83-84.

Shortly thereafter, Plaintiff retained counsel and filed the instant lawsuit.

In opposition to the Motion, Plaintiff has also submitted the Declaration of Randy Rinks. Docket No. 48-4. That Declaration states in pertinent part as follows:

> 2. In my capacity as a member of the Tennessee General Assembly I met Wilson Conrad when he approached me to discuss a matter relating to his employment with the Department of Corrections [*sic*].
>
> 3. Mr. Conrad advised me that he had been terminated from his position with the Department of Corrections [*sic*] and had requested a grievance hearing but had never received that hearing.
>
> 4. I spoke with the then-Commissioner of Corrections [*sic*], Quenton White, on more than one occasion first advising him of Mr. Conrad's situation and asking that he look into it. At some time thereafter, I had a subsequent conversation with Mr. White the date of which I do not remember wherein Mr. White advised me that he was in fact

---

believes that Plaintiff filed that Level IV Grievance Form directly with the Department of Correction. Additionally, in 1994, Mr. Conrad mailed a Level IV Grievance Form to her at the Department of Correction.

Defendant presumably has submitted this Affidavit for the purpose of showing that Plaintiff knew he should file his Level IV Grievance Form with the Department of Correction, not the Department of Personnel. For the reasons discussed below, however, the Court concludes that Plaintiff's 1987 and 1984 grievances are irrelevant.

13

going to provide Mr. Conrad with the hearing in question.

*Id.*

Commissioner White, however, testified:

> [A]t no time during my encounter with Mr. Conrad or anyone else did I promise him a hearing. That's just not something that happened. Otherwise, my instructions to Ms. White would have been different when I went back to the office, was to give him a hearing as opposed to look into it [*sic*].
>
> It was never – and so I don't want that to be misconstrued in any way, shape, or fashion, because that was never a promise to he or anyone else.

Docket No. 43-5.

Thus, there is a factual issue as to whether Commissioner White had decided to afford Plaintiff a Level IV grievance hearing.

### III. Summary Judgment Standards

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To prevail, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *See Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L. Ed. 2d 202 (1986); *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the court must view the evidence in the light most favorable to the nonmoving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the non-moving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a non-moving party, however, fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id*. at 322-23; *Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999).

## IV. Analysis

Defendant raises three arguments in the Motion for Summary Judgment: (1) Plaintiff never filed a grievance with the Department of Correction; (2) Plaintiff's lawsuit is barred by the statute of limitations; and (3) Commissioner White is entitled to qualified immunity. The Court will discuss these arguments below.

First, Commissioner White is not entitled to qualified immunity because this lawsuit seeks only injunctive relief. The doctrine of qualified immunity applies only in cases where an official is sued for damages. *See Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

With regard to Defendant's first argument, that Plaintiff never filed a grievance with the Department of Correction, that statement appears to be technically correct. That fact, however, does not entitle Defendant to summary judgment.

As discussed above, while the Grievance Form states that it should be submitted to the Department of Correction, Plaintiff's termination letter plainly states, "If you have any questions

15

concerning your appeal rights, you should call the State Employee Information line at 615-741-1859 or 1-800-221-7345." Plaintiff testified that he called one of these numbers and that a "Ms. Johnson" told him to fax the Grievance Form to her and, essentially, that she would see that it was properly filed. Telephone records show that Plaintiff made two telephone connections to 615-253-2123, on October 5, 1998, which he testified were the two faxes that he sent.[3]

Despite the fact that Warden Morgan's termination letter says nothing about where a grievance appeal should be filed, Defendant argues that Plaintiff should have known that it had to be filed with the Department of Correction. As discussed above, however, the Rules of the Tennessee Department of Personnel provide only that the Step IV written grievance should be "submitted to the appointing authority or designee . . . ." The term "appointing authority" is not defined in Chapter 1120-11 of the Rules of the Department of Personnel.

The "Administrative Policies and Procedures" of the Department of Correction define "Appointing Authority" as follows:

> The Commissioner of the Department of Correction and those to whom appointing authority has been delegated; specifically, wardens, directors, regional directors, and Superintendent of Tennessee Correction Academy (TCA).

Administrative Policies and Procedures, Tennessee Department of Correction, No. 305.01 (IV) (G). Warden Morgan's letter, however, does not mention the term "appointing authority," nor does it cite the Administrative Policies and Procedures of the Tennessee Department of Correction.

Moreover, even if Plaintiff had concluded that the "appointing authority" was the

---

[3] As discussed above, Plaintiff was required to file his Level IV Grievance Form within fifteen (15) workdays of September 16, 1998. October 5, 1998, was within fifteen (15) workdays of September 16, 1998.

16

Commissioner of the Department of Correction, his Level IV grievance could have been properly submitted either to the Commissioner or to his "designee." It could certainly be argued that, under the circumstances, Plaintiff reasonably believed that Ms. Johnson at the Department of Personnel was an appropriate "designee" to receive his grievance appeal.

Defendant also argues that Plaintiff knew he should file his Level IV grievance appeal with the Department of Correction because he had done so on prior occasions. What Plaintiff may or may not have done on prior occasions, however, is of no consequence, given Plaintiff's testimony that he simply followed the telephonic instructions he was given by a person who answered a telephone number that Plaintiff had been instructed to call if he had questions.

Viewing the facts in the light most favorable to Plaintiff, as the Court must do, at the very least there is a genuine issue as to material fact concerning whether Plaintiff properly filed his grievance. Thus, Defendant is not entitled to summary judgment on this issue.

With regard to Defendant's statute of limitations argument, the applicable statute of limitations for § 1983 cases in Tennessee is one year. T.C.A. § 28-3-104(a)(3). Plaintiff's Complaint was filed December 30, 2004. Defendant argues that Plaintiff knew or should have known of his alleged injury in 1998, but that he waited 6 years to file his Complaint. Defendant argues that Plaintiff knew, based on one of the telephone calls he made to the Department of Personnel, that his Grievance Form had not been received, even by that agency. This argument, however, simply overlooks Plaintiff's testimony that, on one occasion, he called the Department of Personnel and was told that the Grievance Form had been received.

The question of when the statute of limitations began to run is determined by federal law. *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001). A statute of limitations begins to run when the

17

plaintiff knows or should have known of the injury which is the basis of his action. *Id.* A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence. *Id.* at 501.

There is no evidence that Plaintiff actually knew, before sometime in 2004, that the Department of Correction would deny him his Level IV grievance hearing. In fact, Plaintiff testified that he did not realize that he would not be given a Level IV grievance hearing until Ms. Brenda White told him that he would be given such a hearing, but that his hearing was simply never scheduled. According to Plaintiff's testimony, this occurred after January 2004.

Defendant argues that Plaintiff, in the exercise of reasonable diligence, could have determined long before 2004 that he would not be given a Level IV grievance hearing. Plaintiff, however, testified as follows:

> I never – until Mr. White – Ms. White called me, I'd never been told the hearing had been set or not. You know, there's been no – and, you know, there's been cases that are two or three years old now. So I didn't know – I knew I had a right to due process and I filed it, but it just hadn't been set for no hearing.

Docket No. 48-2, p. 48.

The Sixth Circuit has recognized that the question of the exercise of reasonable care or diligence in discovering an injury for purposes of the statute of limitations is generally a question for the trier of fact. *See Gilmore v. Davis*, 2006 U.S. App. LEXIS 15241 at *20 (6th Cir.) (citing cases). As the *Gilmore* Court stated, "It is well-established that the discovery rule ordinarily raises issues of fact as to whether a plaintiff should have known of the claim for relief, and whether a plaintiff exercised 'reasonable diligence,' prohibiting resolution of the issue on either a Motion to Dismiss or Motion for Summary Judgment." *Id.*, *citing Craft v. Vanderbilt Univ.,* 18 F. Supp. 2d

18

786, 796 (M.D. Tenn. 1998).

Defendant further argues that Plaintiff did not properly file his Level IV Grievance Form with the Department of Correction and that neither Commissioner White nor Ms. Brenda White could extend the time for Plaintiff to file a grievance. For the reasons discussed above, however, there is a genuine issue as to material fact concerning whether Plaintiff, in following the instructions of someone at a telephone number he had been invited to call with questions, properly filed his Grievance Form.

Viewing the facts most favorably to Plaintiff, he thought his Grievance Form had been properly filed, and he was simply waiting for his hearing to be set. He was told in early 2004 that a hearing would be set. When he called to check on his hearing, he was told that a hearing had not yet been scheduled. At some point, after January 2004, Plaintiff apparently concluded that he would not receive his Level IV grievance hearing, and he filed this action within one year of knowing of the injury which is the basis of this action. Thus, there is a genuine issue as to material fact concerning whether Plaintiff should have known of his injury prior to one year before filing this action. Defendant, therefore, is not entitled to a judgment as a matter of law concerning the statute of limitations.

## V. Conclusion

For the foregoing reasons, the Court concludes that there are genuine issues as to material fact, and that Defendant is not entitled to a judgment as a matter of law. An appropriate Order will be entered.

E. Clifton Knowles
United States Magistrate Judge

19